IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LOUIS DOODY, | ) | Civ. No. 08-00285 JMS-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING |
| vs. | ) | DEFENDANTS' MOTION TO |
| | ) | CHANGE VENUE |
| PENGUIN GROUP (USA) INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANTS' MOTION TO CHANGE VENUE

Before the Court is Defendants Clive Cussler, Dirk Cussler, Penguin Group (USA), Inc., and Sandecker, RLLP's Motion to Change Venue to the Southern District of New York. The Court heard this Motion on October 29, 2008. After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is DENIED.

FACTUAL BACKGROUND

Doody is a Hawaii resident who moved here from California in 2006. (Doody Decl'n ¶¶ 2-3.) While he was living in California, he wrote a book, Gold of the Khan, and registered it with the United States Copyright Office in February 2003. (Id. ¶¶ 5-6.)

In March 2003, Doody contacted Penguin in response to Penguin's internet solicitation for manuscripts. (Id. ¶ 7.) When Penguin showed interest in Doody's book, he sent paper and electronic copies of it to Penguin. (Id. ¶ 8.) In May 2003, one of Penguin's employees suggested that Doody revise the book and stated she would review it again if he revised it. (Id. ¶ 9.) Doody submitted a revised version to Penguin in August 2003, but Penguin later notified him in early 2004 that it would not publish Gold of the Khan. (Id.) Penguin returned the paper copies to Doody, but not the electronic copy. (Complaint ¶ 18.)

In 2006, Doody moved to Hawaii. (Doody Decl'n ¶ 12.) In November 2006, Penguin released Clive Cussler's book, Treasure of Khan. (Complaint ¶ 19.) Doody alleges that Clive's book copies the plot, themes, setting, sequence of events, and characters from Doody's Gold of the Khan. (Complaint ¶ 20.) He claims that Penguin provided Clive Cussler with access to his book. (Id. ¶ 23.)

By June 2007, Penguin released three other books by Clive Cussler: Trojan Odyssey, Golden Buddha, and The Navigator. (Id. ¶ 24.) Doody later discovered that these books also copied elements from his own book. (Id. ¶ 25.) Doody believes that Defendants "deceived [him] by requesting [his] manuscript, requesting that [he] revise his manuscript, and informing [him] that it would not

2

publish his manuscript while copying substantial protected elements of [Doody's] manuscript." (Complaint ¶ 26.)

Doody brought this action against Defendants, asserting claims for: (1) copyright infringement, (2) conversion of property, (3) unfair and deceptive trade practices, in violation of Haw. Rev. Stat. § 480-2, and (4) breach of implied contract. Defendants answered and brought this Motion to Change Venue.

## STANDARD OF REVIEW

"For convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Weighing the factors "is best left to the discretion of the trial judge." Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Television Events & Mktg., Inc. v. Amcon Distrib. Co., 416 F. Supp. 2d 948, 957 (D. Haw. 2006). "Ultimately, the moving party has the burden of showing that an alternative forum is the more appropriate forum for the action." Id.

## DISCUSSION

Penguin argues that this case should be transferred to the Southern District of New York because "convenience and fairness requires that this case be litigated" there. (Motion at 6.) Doody maintains that transferring the case would make it too expensive for him to pursue his claims. (Opp. at 1.)

The parties agree this Court, in determining whether to transfer venue, must weigh the factors set forth in Jones, 211 F.3d at 498-99. In that case, the Ninth Circuit stated that courts:

> may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

Id. (footnotes omitted). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The moving

party "has the burden of showing that an alternative forum is the more appropriate forum for the action." Television Events & Marketing, Inc., 416 F. Supp. 2d at 957.

A.  Location Where Agreements Were Negotiated and Executed

Defendants argue that, although there was no written contract between the parties, this factor favors transferring venue because the alleged "implied contract" was negotiated while Doody was in California and Defendants were in New York. (Motion at 7.) Doody maintains this factor is not applicable because there was no express contract and the implied contract was breached after he moved to Hawaii. (Opp. at 8-9.)

Although the parties did not enter into an express agreement, the Complaint asserts that Penguin breached an implied contract to pay him for use of his story. (Opp. at 8; Complaint ¶¶ 54-60.) The Complaint alleges that Penguin "solicited manuscripts through its website for consideration for publication," that Doody submitted his manuscript in response, and that Penguin "accepted the manuscript . . . knowing the manuscript was tendered for consideration for publication." (Complaint ¶¶ 54-60.) This correspondence took place while Doody lived in California and before he moved to Hawaii. (Defendants' Exs. B-I; Doody Decl'n ¶¶ 7-11.) This factor therefore weighs in favor of transferring venue.

5

B.		The State Most Familiar with the Governing Law

Defendants argue that New York courts have more experience with copyright and contract issues pertaining to books. (Motion at 8.) Doody asserts this court is competent to consider the copyright claim and is better suited for deciding the Hawaii law claim. (Opp. at 9-11.)

Regarding the copyright claim, this factor is neutral, as this Court would apply the same law as the New York court. Cf. Berry v. Deutsche Bank Trust Co. Ams., Civ. No. 07-00172 SOM/LEK, 2007 WL 2363366, at *7 (D. Haw. 2007) ("Because all federal district courts apply federal copyright law, this factor is neutral as it applies to Berry's copyright claims."). With respect to the state law claim, this factor "strongly favors" Doody because the Southern District of New York does not have the same level of experience with Hawaii law as this Court. Television Events & Mktg., 416 F. Supp. 2d at 971; see Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) ("the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue"). Given the Hawaii law claim, this factor favors keeping the case in this District.

C.	The Plaintiff's Choice of Forum

Defendants acknowledge that this factor favors Doody, but argues that "it should be given no more weight than the other factors."  (Reply at 6.)  Doody contends that "[t]his single factor is the most important."  (Opp. at 11.)

"[T]here is normally a strong presumption in favor of honoring the plaintiff's choice of forum."  Creative Tech., Ltd. v. Aztech Sys. Pte Ltd., 61 F.3d 696, 703 (9th Cir. 1995); Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232, 1243 (D. Haw. 2003) ("The plaintiff's choice of forum is entitled to significant weight.").  Defendants cite Pacific Car and Foundry Co. v. Pence, 403 F.2d 949 (9th Cir. 1968), for the proposition that this factor should be given the same weight as the other factors.  (Motion at 10.)  In that case, the Ninth Circuit held that, where a forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled to minimal consideration.  Here, however, Hawaii does have an interest in Doody because he is a resident of this state, and Hawaii has an interest in the subject matter because one of the claims asserts a violation of Hawaii law.  Pacific Car and Foundry Co. is therefore distinguishable, and Doody's choice of forum is entitled to "significant weight."  Robinson Corp., 304 F. Supp. 2d at 1243.

D.        The Parties' Contacts with the Forum

Defendants assert they have no contacts with Hawaii, and Doody argues he has no contacts with New York. (Motion at 10-11; Opp. at 14-15.)

Doody currently lives in Hawaii and has no contacts with New York. (Doody Decl'n ¶ 2; Opp. at 15.) As for Defendants, Clive and Dirk Cussler live in Arizona, although a number of Clive's books have been sold in Hawaii. (Defendants' Ex. L ¶¶ 8-9, 21). Penguin and Sandecker do not have any offices or employees in Hawaii, and Penguin's headquarters is located in New York. (Id. ¶ 2.) Because each party has minimal or no contacts with the other party's forum of choice, this factor is neutral. See Television Events & Mktg., 416 F. Supp. 2d at 971 (concluding this factor is neutral where the plaintiff had contacts with Hawaii but the defendants did not).

E.        Contacts Relating to the Cause of Action in the Forum

Defendants contend that all operative facts in this case occurred while Doody resided in California. (Motion at 11-12.) Doody argues that his claims accrued after he moved to Hawaii. (Opp. at 15.)

The Complaint asserts claims for copyright infringement, conversion of property, unfair and deceptive trade practices, and breach of implied contract. (Complaint at 7-13.) For the copyright infringement claim, Doody will have to

establish that he "owns the copyright and that defendant copied protected elements of the work." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 636 (9th Cir. 2008). Doody wrote his manuscript and registered his copyright while he was living in California. (Doody Decl'n ¶¶ 2, 6-10, 12.) Any infringement by Defendants would have occurred in Arizona or New York, where Defendants are located, although Doody discovered the infringement after moving to Hawaii. (Defendants' Ex. L ¶¶ 2, 8-9; Doody Decl'n ¶ 14.)

Regarding the breach of implied contract claim, Doody will have to establish that an implied contract existed, that Penguin breached it, and that Doody suffered damages. See Chuck Jones & MacLaren v. Williams, 101 Haw. 486, 500, 71 P.3d 437, 451 (Haw. Ct. App. 2003). All correspondence between Doody and Penguin that resulted in the alleged contract took place while Doody was in California. (Defendants' Exs. B-I.) If Penguin breached the contract, it would have done so somewhere outside of Hawaii and possibly in New York, where its headquarters is. (Defendants' Ex L ¶ 2.) Finally, because Doody lived in Hawaii when he discovered the alleged breach, he suffered damages in this District.

Neither party addresses their contacts to Hawaii and New York relating to the claims for conversion of property and unfair and deceptive trade practices. The Court therefore concludes that this factor is neutral as to those

9

claims.  With respect to the copyright and breach of contract claims, this factor is also neutral because some of the operative facts occurred in New York and some occurred in Hawaii.

F.		Differences in the Costs of Litigation in the Two Forums

Defendants assert that litigating this case in Hawaii will cost twice or three times as much as litigating in New York.  (Motion at 13-15.)  Doody argues that litigating in New York would be cost prohibitive for him and that it would be less of a burden for Defendants to litigate in Hawaii. (Opp. at 16-17.)  Judge Gillmor addressed similar arguments in Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060 (D. Haw. 2000).

In Miracle, 87 F. Supp. 2d at 1063, the plaintiff brought an action in Hawaii for defamation against the New York Post and a columnist regarding an article that accused the plaintiff of social security fraud.  The defendants moved to transfer venue from this District to the Southern District of New York, arguing that most of the witnesses were in New York, the plaintiff was the only witness located in Hawaii, the primary distribution of the Post is in New York, and it would be difficult and expensive for the defendants travel to Hawaii.  Id. at 1073.  The Court noted, however, that the "Post is a large corporation that could more easily travel to Hawaii to litigate than could Plaintiff travel to New York." Id.  The Court

10

therefore concluded that the defendants' "assertions regarding monetary expense and difficulty" were unpersuasive and declined to transfer the case. <u>Id.</u> at 1073.

Here, like in <u>Miracle</u>, although several of the witnesses are in New York, Penguin is a large corporation that could more easily travel to Hawaii to litigate than could Doody travel to New York. Additionally, Doody and five of the twelve witnesses Defendants identify do not live in New York. (Motion at 13-15.) Because these witnesses, which include some of the Defendants, would have to travel to New York, transferring this case "would merely shift rather than eliminate the inconvenience." <u>Decker Coal Co.</u>, 304 F. Supp. 2d at 843. Thus, this factor does not weigh in favor of transferring this case to New York. <u>See</u> <u>Robinson Corp.</u>, 304 F. Supp. 2d at 1244.

G.        Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

Defendants contend that three potentially unwilling non-party witnesses can be subpoenaed in New York but not in Hawaii. (Motion at 16.) Doody maintains that it is speculative whether the non-party witnesses are "unwilling" and that they can be deposed wherever they live. (Opp. at 18.)

Defendants identify seven non-party witnesses. (Motion at 13-15.) Four of those witnesses live in New York, two in Arizona, and one in Massachusetts. (<u>Id.</u>) Defendants' argument that three of the witnesses living in

11

New York "may be 'unwilling witnesses' because they are former employees of Topaz" is based on pure speculation. Further, the parties could conduct video depositions so that these witnesses do not have to travel to Hawaii to testify. This factor is therefore neutral.

H.         The Ease of Access to Sources of Proof

Defendants contend that "the records and witnesses are on the mainland, and mostly in New York." (Motion at 17.) Doody points out that most of the witnesses are parties or employees of Penguin and that most of the documents are in Defendants' control. (Opp. at 19.)

As Doody notes, all of the relevant documents are in the parties' control. Whether they are located in Hawaii, California, or New York, access to those documents should be easy because they can be electronically transmitted between the parties. See Miracle, 87 F. Supp. 2d at 1073 ("in this era of fax machines and discount air travel, it is not unreasonable to require a party to litigate in a distant forum"). Regarding witnesses, Doody lives in this District whereas seven witnesses identified by Defendants live in New York. Four witnesses, including Defendants Clive and Dirk Cussler, live in Arizona, and one witness lives in Massachusetts. (Motion at 13-15; Defendants' Ex. L at 3-5.) Considering

most of the witnesses live outside of Hawaii, this factor weighs in favor of transferring venue.

I.          Presence of a Forum Selection Clause

This factor is neutral, as there is no relevant forum selection clause.

J.          Relevant Public Policy of the Forum State

Defendants contend there "are no issues particular to Hawaii and no applicable public policy of Hawaii." (Motion at 17.) Doody argues that public policy favors keeping the case in this District. (Opp. at 19.)

Doody is a Hawaii resident who lived here when he was injured by Defendants' actions and when he filed this case, and he plans on residing here permanently. (Doody Decl'n ¶¶ 12-14.) Additionally, at least one of his claims asserts violations of Hawaii state law. Hawaii surely has an interest in resolving claims involving its residents and laws. Thus, this factor favors keeping the case in this District.

K.     Balancing the Factors

Only two of the foregoing factors favors transferring this case to the Southern District of New York. The remaining factors are either neutral or weigh in favor of keeping the case in this District. Defendants, in short, have not made "a strong showing of inconvenience to warrant upsetting the plaintiff's choice of

forum." Decker, 805 F.2d at 843.  Defendants fail to meet their burden of showing the Southern District of New York is the more appropriate forum for this action. Television Events & Mktg., 416 F. Supp. 2d at 957.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Change Venue is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 3, 2008.



/S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Doody v. Penguine Group (USA) Inc., et al., Civ. No. 08-00285 JMS-BMK; ORDER DENYING DEFENDANTS' MOTION TO CHANGE VENUE.